**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MEAGHAN BAUER and STEPHANO DEL ROSE,<br><br>           Plaintiffs,<br><br>v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of Education, and THE DEPARTMENT OF EDUCATION<br><br>           Defendants. | Civil Action No. 1:17-cv-1330 (RDM) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.   THE DECISION OF WHETHER TO POSTPONE THE EFFECTIVE DATE OF AGENCY ACTION PENDING JUDICIAL REVIEW IS COMMITTED TO AGENCY DISCRETION BY LAW .................... 2

II.  THE DEPARTMENT ADEQUATELY JUSTIFIED THE SECTION 705 NOTICE ............................... 7

   A.   Plaintiffs Do Not Demonstrate That The Department Was Obligated To Use............ 7

   B.   The Department Appropriately Determined That Justice Required The Delay ........ 10

III. PLAINTIFFS DO NOT DEMONSTRATE the IFR IS INVALID.................................................... 16

   A.   The Department's Interpretation Is Entitled To *Chevron* Deference.......................... 16

   B.   The Department's Interpretation Is Reasonable ........................................................ 19

      1.   *The master calendar provision's text supports the Department's interpretation* ................................................................................................ 19

      2.   *Plaintiffs do not show that the statute's objectives do not support the Department's interpretation* ............................................................... 20

      3.   *The Department's long-standing practice supports its interpretation* ............. 22

   C.   The IFR Was Adequately Justified .......................................................................... 23

IV.  PLAINTIFFS DO NOT DEMONSTRATE ADDITIONAL PROCEDURES WERE REQUIRED.............. 24

V.   ANY RELEVANT REMEDY ISSUES SHOULD BE ADDRESSED IN SUPPLEMENTAL BRIEFING .... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Am. Great Lakes Ports Ass'n v. Zukunft*,
No. 16-cv-1019 (RC), 2017 WL 5128999 (D.D.C. Nov. 3, 2017) ........................................ 25

*Am. Lung Ass'n v. EPA*,
134 F.3d 388 (D.C. Cir. 1998) ........................................................................................ 25

*Arizona v. Thompson*,
281 F.3d 248 (D.C. Cir. 2002) ........................................................................................ 17

*Ass'n of Private Colls. & Univs. v. Duncan*,
870 F. Supp. 2d 133 (D.D.C. 2012) ................................................................................. 18

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984) .................................................................................................. 18, 19

*CityFed Fin. Corp. v. OTC*,
58 F.3d 738 (D.C. Cir. 1995) ............................................................................................ 3

*Clifford v. Pena*,
77 F.3d 1414 (D.C. Cir. 1996) .......................................................................................... 7

*Ctr. for Auto Safety v. Dole*,
846 F.2d 1532 (D.C. Cir. 1988) ........................................................................................ 7

*Dickson v. Secretary of Defense*,
68 F.3d 1396 (D.C. Cir. 1995) .......................................................................................... 6

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) ......................................................................................................... 3

*Drake v. FAA*,
291 F.3d 59 (D.C. Cir. 2002) ......................................................................................... 3, 6

*Ethyl Corp. v. EPA*,
541 F.2d 1 (D.C. Cir. 1976) ........................................................................................... 12

*Fla. Pub. Telecomms. Ass'n, Inc. v. FCC*,
54 F.3d 857 (D.C. Cir. 1995) ............................................................................................ 4

*Foster v. Mabus*,
895 F. Supp. 2d 135 (D.D.C. 2012) ................................................................................... 7

*Fund for Animals v. Norton*,
512 F. Supp. 2d 49 (D.D.C. 2007) ................................................................................... 13

*Heckler v. Chaney*,
470 U.S. 821 (1985) ......................................................................................................... 6

*Hibbs v. Winn*,
  542 U.S. 88 (2004) ...................................................................................... 20

*Kreis v. Sec'y of Air Force*,
  866 F.2d 1508 (D.C. Cir. 1989) .................................................................. 12

*Lozano v. Montoya Alvarez*,
  134 S. Ct. 1224 (2014) ................................................................................. 4

*Luddington v. Indiana Bell Tel. Co.*,
  966 F.2d 225 (7th Cir. 1992) ...................................................................... 20

*Mail Order Ass'n of Am. v. U.S. Postal Serv.*,
  986 F.2d 509 (D.C. Cir. 1993) .................................................................... 15

*Milner v. Dep't of Navy*,
  562 U.S. 562 (2011) .................................................................................... 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*,
  463 U.S. 29 (1983) ...................................................................................... 14

*Nat'l Venture Capital Ass'n v. Duke*,
  No. 17-cv-1912 (JEB), 2017 WL 5990122 (D.D.C. Dec. 1, 2017) ........................ 14

*NRDC, Inc. v. SEC*,
  606 F.2d 1031 (D.C. Cir. 1979) .................................................................. 13

*Oceana v. Bureau of Ocean Energy Mgmt.*,
  37 F. Supp. 3d 147 (D.D.C. 2014) .............................................................. 12

*Padula v. Webster*,
  822 F.2d 97 (D.C. Cir. 1987) ........................................................................ 7

*Sec'y of Labor v. Twentymile Coal Co.*,
  456 F.3d 151 (D.C. Cir. 2006) ...................................................................... 3

*Sierra Club v. Gorsuch*,
  715 F.2d 653 (D.C. Cir. 1983) .................................................................... 13

*Sierra Club v. Jackson*
  833 F. Supp. 2d 11 (D.D.C. 2012) ................................................................ 9

*Sierra Club v. U.S. Dep't of Agric., Rural Util. Serv.*
  841 F. Supp. 2d 349 (D.D.C. 2012) ............................................................ 25

*St. Lawrence Seaway Pilots Ass'n v. U.S. Coast Guard*,
  85 F. Supp.3d 197 (D.D.C. 2015) ............................................................... 25

*State v. Bureau of Land Management*,
  No. 17-cv-03804, 2017 WL 4416409 (N.D. Cal. Oct. 4, 2017) ............................ 11

*Texas Rural Legal Aid v. Legal Servs. Corp.*,
    940 F.2d 685 (D.C. Cir. 1991) ............................................................................ 18

*UC Health v. NLRB*,
    803 F.3d 669 (D.C. Cir. 2015) ............................................................................ 17

*Vill. of Barrington*, Ill. *v. Surface Transp. Bd.*,
    636 F.3d 650 (D.C. Cir. 2011) ............................................................................ 12

*Watervale Marine Co.*, Ltd. *v. DHS*,
    55 F. Supp. 3d 124 (D.D.C. 2014) ...................................................................... 5, 6

*Wheelabrator Corp. v. Chafee*,
    455 F.2d 1306 (D.C. Cir. 1971) .......................................................................... 16

## Statutes

5 U.S.C. § 705 ........................................................................................................ *passim*

20 U.S.C. § 1089(c) ................................................................................................20

## Legislative Material

Administrative Procedure Act, Legislative History 79th Cong., 1944-46, S. Doc. No.
248 (1946) ............................................................................................................... 3

## Other Authorities

Attorney General's Manual on the Administrative Procedure Act 106 (1947) ……………….. 10

Pursuant to Congress' specific statutory authority in 5 U.S.C. § 705, the Department of Education (the "Department") postponed, pending judicial review, the effective date of certain provisions of a regulation addressing borrower defense discharges (the "Final Rule") because it found that "justice so require[d]."  The Department then provided notice that, pursuant to a long-standing Department interpretation of a provision of the Higher Education Act ("HEA"), and a corresponding practice of implementing financial aid regulations only at the beginning of award years, the postponed regulatory provisions would become effective, at the earliest, at the beginning of the next award year on July 1, 2018.  Plaintiffs would like to see the Final Rule become effective sooner.  But in neither their Motion for Summary Judgment nor their Opposition and Reply Brief, ECF No. 46 ("Pls.' Opp."), do Plaintiffs demonstrate that the Department's actions were unlawful.

As described below, Section 705's plain text, and the Administrative Procedure Act's ("APA") statutory scheme as a whole, demonstrate Congress' intent to commit to agency discretion the decision of whether to stay the effective date of an action pursuant to Section 705. Moreover, even if an agency's action under Section 705 were reviewable, that review must give due deference to the statute's inherently flexible and discretionary standard.  Plaintiffs' attempt to impose on the Department obligations beyond finding that "justice so requires" a delay would essentially treat actions pursuant to Section 705 the same as action taken pursuant to the APA's substantive rulemaking provisions, rendering Section 705 a nullity.  Because such interpretations are disfavored, and the Department made the only finding it was required to, the Court should grant summary judgment for Defendants on the 705 claims.

Plaintiffs' challenges to the Interim Final Rule ("IFR") fare no better.  The IFR merely provides notice of the Final Rule's earliest possible effective date under the Department's long-standing interpretation of the "master calendar" provision of the HEA, which is entitled to *Chevron*

deference.  Plaintiffs claim that *Chevron* deference should not apply because the Department claimed it did not have discretion to set an effective date earlier than it did, and that *Chevron* applies only to interpretations which reflect discretionary agency acts.  But Plaintiffs' argument conveniently confuses discretion in interpreting a statute (which the Department clearly exercised here), with discretion to act in light of the agency's interpretation.  Only lack of the former precludes *Chevron* deference, but the Department, pursuant to the exercise of its delegated authority to interpret the HEA, only lacks the latter here.  Plaintiffs' allegation that the Department's interpretation is unreasonable is similarly unavailing because it is based on erroneous statements of law and fact. The text and objectives of the master calendar provision, as well as the Department's historical practice, all support the Department's interpretation.  The Court should grant summary judgment to Defendants on the IFR claims as well.

## I.    THE DECISION OF WHETHER TO POSTPONE THE EFFECTIVE DATE OF AGENCY ACTION PENDING JUDICIAL REVIEW IS COMMITTED TO AGENCY DISCRETION BY LAW

Section 705 grants an agency the discretion to "postpone the effective date of action taken by it, pending judicial review," any time the agency "finds that justice so requires."  5 U.S.C. § 705.  It does not provide any further guidance for an agency to exercise this broad discretion, or for a court to review the agency's exercise of discretion.  Section 705 accordingly vests an agency, so long as it bases its action on a finding that "justice so requires," with unreviewable discretion to effect a temporary postponement of its action during the limited period of judicial review of that action.  Although Plaintiffs argue that this language is "not so vague as to be discretionary and devoid of a standard," Pls.' Opp. at 8 (citation omitted), this assertion is undermined by the text of Section 705, the way it fits within the larger statutory scheme of the APA's judicial review provisions, and the limited effect of a postponement under Section 705.  These all suggest that Congress intended to insulate from judicial review this narrowly circumscribed exercise of agency

2

authority, the very purpose of which is to postpone agency action, thus preserving the status quo and "mak[ing] judicial review [of the underlying action] effective." Administrative Procedure Act, Legislative History 79th Cong., 1944-46, S. Doc. No. 248, at 277 (1946). *See Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) ("In determining 'whether a matter has been committed solely to agency discretion, we consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action.'") (quoting *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002)).

As discussed in the Defendants' opening brief, Section 705's plain text sets forth differential standards for agencies on the one hand, and courts on the other, to exercise their authority to provide "relief pending review" of a particular agency action.  5 U.S.C. § 705.  While an agency's limited authority is conditioned upon it making a finding that "justice so requires," courts are granted the authority, as necessary to prevent "irreparable injury," to "issue all necessary and appropriate process" not only to postpone an effective date pending its review, but also to "preserve status or rights."  *Id.*   Congress' decision to use the term "irreparable injury" in connection with a court's Section 705 authority is a clear indication that it intended courts to employ traditional standards for awarding temporary injunctive relief.  *See, e.g.*, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("The traditional standard for granting a preliminary injunction requires the plaintiff to show that . . . he will suffer irreparable injury . . . ."); *CityFed Fin. Corp. v. OTC*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("[t]he basis of injunctive relief in the federal courts has always been irreparable harm" (alteration in original) (citation omitted)); Pls.' Opp. at 14 (recognizing that courts, for over "sixty years," have relied on four factors, including "the likelihood of irreparable injury if a stay is not granted," to determine "whether equity warrants a stay").  As Plaintiffs elsewhere recognize, Congress is presumed to "legislate[] against a

3

background of common-law adjudicatory principles." Pls.' Opp. at 18 (quoting *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1226 (2014)).  The second sentence of Section 705 (which addresses *court* stays of agency action) thus sets forth a well-established *judicial* standard for courts to grant temporary relief, *i.e.*, the four-factor test for awarding preliminary injunctive relief which is premised upon preventing irreparable injury, during the pendency of judicial review.

In stark contrast, the first sentence of Section 705 (which addresses *agency* stays of agency action) does not contain any reference to either "irreparable injury" or any other factor a court would use in awarding temporary injunctive relief.  Plaintiffs thus have it exactly backwards when they argue that the existence of a "manageable standard" in Section 705's second sentence provides a "strong indication that the first sentence," although not providing for one in the text, "likewise imposes a similarly discernible and reviewable standard." Pls.' Opp. at 12.  Such a reading would "invert[] the usual canon that when Congress uses different language in different sections of a statute, it does so intentionally."  *Fla. Pub. Telecomms. Ass'n, Inc. v. FCC*, 54 F.3d 857, 860 (D.C. Cir. 1995).  Instead, Congress' decision to set forth a discrete, manageable standard incorporating a well-established body of law for a court to apply, while choosing not to do the same with respect to an agency's action under the same statute, suggests that the lack of a standard in the first sentence was intentional and that Congress did not intend for the courts to have any role in reviewing agency action taken pursuant to that sentence (as opposed to the underlying agency action itself, review over which it is the very purpose of Section 705's first sentence to enable).

Similarly, the "statutory scheme as a whole," Pls.' Opp. at 12, reveals Congress' intention to carve out and insulate from the APA's judicial review provisions an agency's decision to delay the effective date of its action pending judicial review of that underlying action.  The court must consider "the function and purpose of the statute as a whole" to determine, among other things,

whether it provides "guidance or standards from other portions of the statute," whether it provides "alternative avenues for relief other than challenging the agency action in court," and whether "a deferential attitude on the part of Congress toward the agency's decision making in this area permeates the overall structure of the statute." *Watervale Marine Co., Ltd. v. DHS*, 55 F. Supp. 3d 124, 139 (D.D.C. 2014) (citations omitted).

Here, the APA sets forth a carefully delineated mechanism for review of agency action. Congress' placement of Section 705's specific and limited agency authority – to postpone temporarily, pending judicial review, an effective date of an agency action – within the very provisions of the APA that govern judicial review reveals that an agency's action under Section 705 is designed to facilitate judicial review of the underlying action, and that it does not constitute the type of final agency action reviewable itself by a court under the normal review provisions of the APA.  Specifically, 5 U.S.C. §§ 701-706 make up Chapter 7 of the APA, titled "judicial review."  These provisions generally establish a right of judicial review for individuals suffering legal wrong as the result of agency action – except to the extent judicial review does not apply because either judicial review is precluded by statute or the agency action in question is committed to agency discretion by law.  Section 704 defines the types of actions that are reviewable and Section 706 describes the scope of judicial review of such actions.  The intervening section, Section 705, provides that both agencies and courts can act to provide "relief pending review" of an underlying agency action subject to judicial review.  Section 705 does not in any way limit a court's ability to review the underlying agency action (indeed, its purpose is to facilitate such review by freezing the status quo and providing a court adequate time to consider a legal challenge to the action) under the normal standards for reviewing agency action under the APA.  That the APA's judicial review provisions define a set of actions that are themselves subject to judicial

review, as well as delineate the scope of judicial review over such actions, while separately providing for an agency to afford a limited form of relief pending such review, provides clear evidence that Congress did not intend for the agency's action granting "relief pending review" to itself be reviewable under the APA or any other source of law.

Plaintiffs' primary argument in favor of the reviewability of the 705 Notice is that, following the D.C. Circuit's decision in *Dickson v. Secretary of Defense*, 68 F.3d 1396 (D.C. Cir. 1995), it is "not an open question in the D.C. Circuit" whether the language used in Section 705 commits  to an agency's discretion action taken pursuant to this Section. Pls.' Opp. at 8-9.  But while *Dickson* addressed similar language ("in the interest of justice") as is contained in Section 705, it involved a different statutory provision within a different statutory scheme.  And, as Plaintiffs recognize, *see id*. at 7, courts considering whether a statute commits a particular determination to an agency's discretion do not simply read the relevant statutory text in isolation, but consider "a variety of factors," including "the language and structure of the statute that supplies the applicable legal standards," and Congress' overall intent to "commit the matter fully to agency discretion as evidenced by, among other things, the statutory scheme."  *Watervale Marine Co.*, 55 F. Supp. 3d at 137-38 (citation omitted).  Because the key inquiry is into the statutory scheme as a whole and, ultimately, into congressional intent in enacting that scheme, *Dickson's* holding is not directly controlling in this case.[1]  *See Drake*, 291 F.3d at 70 ("In determining whether a matter

---

[1] Unlike in *Dickson*, which involved the narrow decision of whether to excuse a failure to seek correction of military records within a statutory period, an agency's determination of whether "justice so requires" a temporary postponement pending judicial review involves "a complicated balancing of factors which are *peculiarly within [the agency's] expertise*." *Dickson*, 68 F.3d at 1403 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (alteration in original).  As described in more detail below, such factors include not only the relative merits of the legal challenge to the agency action, but also whether the agency is likely to reconsider or revise the challenged action from a policy perspective, and whether, in light of such a policy change, the costs of bringing the regulated industry into compliance with existing policy is justified.

has been committed solely to agency discretion, we consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action.").  For the reasons set forth above, an appropriate analysis of Section 705, within the context in which it exists, reveals a congressional intent to commit the relevant decision to agency discretion,  which did not exist in *Dickson*.[2]

## II.    THE DEPARTMENT ADEQUATELY JUSTIFIED THE SECTION 705 NOTICE

### A.    Plaintiffs Do Not Demonstrate That The Department Was Obligated To Use The Four-Factor Test Employed By Courts

As described both above and in Defendants' opening brief, although the plain text of Section 705 authorizes a *court* to take action as necessary to prevent irreparable injury, it does not require an *agency*, in postponing its action pursuant to Section 705, to consider irreparable injury or any other factor a court would consider in determining whether to grant preliminary injunctive relief.  Nonetheless, Plaintiffs continue to argue that Congress intended "that agencies exercise the same equitable authority as courts in issuing stays," (including the judicial four-factor test for

---

[2] Plaintiffs also argue that the 705 Notice is reviewable because other courts and agencies have "found the statute to provide manageable standards."  Pls.' Opp. at 11 and n.5.  But because none of the court decisions Plaintiffs cite actually addressed the question of whether agency action under Section 705 is reviewable, they are of limited persuasive value.  With respect to the practices of other agencies and Plaintiffs' contention that courts have "repeatedly" found agency action reviewable where the particular agency acting had derived a more specific standard than that set forth by a statute," Plaintiffs' cited cases merely stand for the proposition that when an agency promulgates regulations to aid it in carrying out its statutory mandate, such "self-imposed constraints" may supply the relevant law to apply.  *Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988); *see also Clifford v. Pena*, 77 F.3d 1414, 1417 (D.C. Cir. 1996); *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) (agency must "adhere to voluntarily adopted, binding policies that limit its discretion.").  Here, the Department of Education has issued no formal statement of policy, in a regulation or otherwise, to guide its discretion under Section 705, and Plaintiffs provide no support for the proposition that one agency can provide law for a different agency to apply, thereby making reviewable the second agency's otherwise unreviewable discretion.  *Cf. Foster v. Mabus*, 895 F. Supp. 2d 135, 145 (D.D.C. 2012) (noting that the "key to any determination of reviewability is *congressional* intent" (citation omitted)).

determining the appropriateness of preliminary injunctive relief), Pls.' Opp. at 18, even though Congress expressly set forth in the same statutory provision a different standard for *agencies* to use to postpone agency action. While Plaintiffs do their best to conflate Section 705's differential grants of authority and apply to agencies the standard applicable to courts, they utterly fail to substantiate their attempt to conjure out of thin air an extra-textual requirement that agencies consider the preliminary injunction factors before exercising their Section 705 authority.

Plaintiffs' attempt parallels their meritless argument for judicial review insofar as it seeks to read the standard in Section 705's second sentence – *i.e.*, that an effective date can be postponed by a court as necessary to prevent irreparable injury – into the statute's first sentence, which imposes no requirement other than that an *agency* determine that justice so requires a postponement. As described above, Congress' use of a different standard for courts and for agencies suggests the exact opposite: that Congress intended to impose different requirements on judicial action and agency action, and did not intend to hold agencies to the formal, four-part test a court would apply when assessing requests to prevent irreparable injury by granting preliminary injunctive relief. Thus, Plaintiffs say nothing about what standard an agency should use under Section 705 by repeatedly noting that courts have traditionally applied the four-factor preliminary injunction test when acting pursuant to Section 705. Nor does the fact that some other agencies have at times voluntarily chosen to apply this test when applying Section 705 demonstrate that *all* agencies are *required* to consider the same four factors every time they exercise their statutory authority. Defendants do not dispute that consideration of such factors might sometimes be relevant to an agency's finding that justice requires a temporary postponement in a given situation.[3]

---

[3] Indeed, the 705 Notice reflects consideration of the factors that inform a preliminary injunction analysis, insofar as it determined that (1) the plaintiffs "have raised serious questions concerning the validity of certain provisions of the final regulations," (2) there were "substantial injuries that

What Plaintiffs argue, however, is that "justice so requires" imposes a mandatory obligation on an agency to consider the preliminary injunction factors as a necessary precondition before acting pursuant to Section 705.  Such a statutory obligation is not created by other agencies having "acknowledged that the four factors appropriately guided them in determining whether justice required stays of their own actions pending judicial review."  Pls.' Opp. at 17.[4]

Plaintiffs are thus left with *Sierra Club v. Jackson*, 833 F. Supp. 2d 11 (D.D.C. 2012), as the only authority suggesting that an agency, as opposed to a court, is required to consider the judicially-created four-factor test.  Defendants explained in their opening brief why that particular holding is poorly reasoned and provides no basis for ignoring the clear text of Section 705, *see* Defs.' Mot. for Summ. J. ("Defs.' MSJ") at 29-30, ECF No. 35-1, and Plaintiffs' opposition does not even attempt to respond to those arguments.  Instead, Plaintiffs point to the same legislative history relied on by the *Sierra Club* court.  *See* Pls.' Opp. at 15-16.  But as also explained in Defendants' opening brief, that legislative history is inconclusive at best and stops well short of demonstrating any affirmative requirement that agencies and courts employ the same standard or engage in the same analysis.  And Plaintiffs' reference to the Attorney General's APA Manual is similarly unpersuasive because it too is silent on the question of whether an agency must employ

---

could result if the final regulations go into effect before those questions are resolved," including the modification of existing contracts, (3) the balance of harms favored postponement because implementation "could impose substantial costs" on institutions while "the postponement of the final regulations will not prevent student borrowers from obtaining relief" under existing regulations, and (4) the public interest favored postponement because "the United States will suffer no significant harm" and postponement would "avoid … significant costs to the Federal government and ultimately the Federal taxpayer."  AR-A at 1-2.

[4] This is not a situation, as in *Sierra Club v. Jackson*, in which the agency departed from past practice, without adequate explanation for the change, by not using the preliminary injunction test to exercise its Section 705 authority.  833 F. Supp. 2d at 31.  As described in Defendants' opening brief, and not disputed by Plaintiffs, the Department has never before applied the judicially-created four-factor test when acting pursuant to Section 705.

the four-factor test before exercising its Section 705 authority.  Tellingly, while the Manual emphasizes that Section 705 invokes "irreparable injury" – what it refers to as "the historic condition of equity jurisdiction" – and makes such a finding the "indispensable condition to the exercise of the power conferred by [Section 705] upon *reviewing courts*," the Manual does not suggest that an agency need make a similar finding before exercising its own authority and indeed does not speak of any standard to which an agency must adhere when issuing a Section 705 postponement.  *See* Attorney General's Manual on the Administrative Procedure Act 106 (1947) (emphasis added).  Plaintiffs are correct that the Manual does "not suggest a different or lesser standard applied when agencies consider imposing a stay." Pls.' Opp. at 16.  But given that the statutory text explicitly lays out such a "different or lesser standard" for an agency to apply – "justice so requires" – and it is Plaintiffs that are attempting to substitute ambiguous legislative history for clear statutory meaning, this silence does not work in Plaintiffs' favor.  *See Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) (noting that while legislative history may sometimes "illuminate ambiguous text," Court would not "take the opposite tack of allowing ambiguous legislative history to muddy clear statutory language").

   **B.     The Department Appropriately Determined That Justice Required The Delay**

   In order to invoke its authority to postpone an effective date under Section 705, all an agency need do is "find[] that justice so requires." 5 U.S.C. § 705.  As explained in the Defendants' opening brief, the Department made this finding, referencing a host of relevant factors including the presence of the CAPPS litigation and the serious questions it raised about the validity of the Final Rule, the harm that implementation during the pendency of judicial review would impose on the regulated community, the costs savings to the United States, the extent to which any harm a temporary delay might cause to student borrowers would be mitigated by the Department's

ongoing processing of borrower defense claims under existing law, and the practical reality that the Department was (and remains) actively considering whether to revise its Borrower Defense regulations through appropriate procedures.  To the extent judicial review of this determination is available, the Department's finding satisfies Section 705's inherently flexible standard.

Plaintiffs' challenge to the Department's finding ignores the text of Section 705 and conflates the Department's 705 Notice, which was issued pursuant to Section 705's limited and specific grant of statutory authority for a temporary postponement of the Final Rule's effective date, with a substantive rescission of the Final Rule.  Accordingly, Plaintiffs' brief focuses not on whether the Department satisfied Section 705's *de minimis* requirements, but instead tries to import an entirely different standard, one that would be applicable were the Department actually rescinding or revising the Final Rule, into the "justice so requires" language of Section 705.  This would include requiring that the Department explain its alleged "change in position" with respect to, among other things, whether the benefits of the Final Rule, on their merits, outweigh the costs, *see* Defs.' MSJ at 31.  As explained in the Department's opening brief, the 705 Notice is a temporary procedural device that merely postpones the effective date of the Final Rule pending judicial review in the CAPPS litigation; it does not alter or rescind the Final Rule and the Department was accordingly not required to supplement its "justice so requires" finding with any further justification that might be required if it were announcing a new or different policy.[5]

---

[5] Plaintiffs cite *State v. Bureau of Land Management*, No. 17-cv-03804 2017 WL 4416409 (N.D. Cal. Oct. 4, 2017), for the proposition that "not considering benefits lost by delay is a *per se* failure to meet the 'justice so requires' requirement of Section 705. Pls.' Opp. at 21.  But that non-binding decision relied on flawed logic similar to that espoused by Plaintiffs here in finding that an agency was required to explain, as part of its justification for invoking Section 705, a change in policy with respect to the costs and benefits associated with the delayed rule.  *Id*. at 11.  As explained above, that mis-states the requirements of action pursuant to Section 705.  In any case, as described in Defendants' opening brief, *see* Defs.' MSJ at 24 n.6, that case is inapposite because it involves a 705 postponement that was issued after the relevant agency action had already become effective.

Assuming *arguendo* that the arbitrary and capricious standard of review applies to impose any obligation on an agency above and beyond what the text of Section 705 requires, the standard is a "highly deferential" one that "presumes agency action to be valid" and "forbids the court's substituting its judgment for that of the agency." *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C. Cir. 1976). It cannot be applied to swallow the text of Section 705 and replace the Department's assessment of what justice required in this situation with Plaintiffs' preferred weighing of the relevant considerations. Indeed, as Plaintiffs admit elsewhere in their opposition brief, judicial review in this case is limited to, at most, "whether the agency acted arbitrarily and capriciously in applying the statutory standard" set forth by Section 705. Pls.' Opp. at 13 n.7. That statutory standard imposes no requirement that an agency consider any specific factors or make any particular findings, and it is well-established that "the APA's arbitrary and capricious standard alone [does not] require[] an agency to engage in cost-benefit analysis." *Vill. of Barrington, Ill. v. Surface Transp. Bd.*, 636 F.3d 650, 670–71 (D.C. Cir. 2011). Moreover, when an agency does not actually change policy, as it does not do when it acts pursuant to Section 705, the cited line of cases requiring a reasoned explanation for the change, *see* Pls.' Opp. at 21, is "inapposite." *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147, 165 n.18 (D.D.C. 2014).

Plaintiffs also recognize in another section of their brief that review under Section 705's discretionary "justice so requires" standard, to the extent it is available, must apply "all due deference" to the agency's determination. Pls.' Opp. at 10 (quoting *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514–15 (D.C. Cir. 1989)). But the rest of Plaintiffs' briefing ignores Section 705's actual text and the deference that an agency's determination is due, and instead attacks the Department's 705 Notice for not giving sufficient consideration to the factors that Plaintiffs deem most deserving of attention, namely the "impact of delay on those the rule was designed to protect,"

*Id*. at 20.  But there is no basis to conclude that Congress, in implementing a flexible, discretionary standard that provides for any agency to take swift action to delay an effective date in the isolated circumstance in which that action has been challenged and for the limited duration of judicial review over that challenge, intended to require agencies to treat the temporary delay as a substantive repeal and engage in a full reconsideration of the merits of the challenged action.

Agency action can take many forms, and it is simply not the case that all such action needs to be justified in the same way or that there exists some overarching "arbitrary and capricious" standard of review that requires, in every situation, an agency to justify its action with voluminous findings and a detailed analysis of the costs and benefits associated with that action.  The APA's default standard instead "encompasses a range of levels of deference to the agency," *Fund for Animals v. Norton*, 512 F. Supp. 2d 49, 54 (D.D.C. 2007) (citation omitted), and "requires reviewing courts to adjust their inquiry according to the particular agency action under review," *Sierra Club v. Gorsuch*, 715 F.2d 653, 658 (D.C. Cir. 1983).  *See also NRDC, Inc. v. SEC*, 606 F.2d 1031, 1050 (D.C. Cir. 1979) (review "depends upon analysis of a number of factors, including the intent of Congress," "the needs, expertise, and impartiality of the agency as regards the issue presented; and the ability of the court effectively to evaluate the questions posed").

The particular agency action at issue here is a temporary delay under Section 705 of the APA, and thus review must focus on whether the Department made the finding that justice requires a temporary postponement and not on whether, as Plaintiffs urge, the Department has explained a change in position with respect to the substantive provisions of the delayed Final Rule.  As explained above and in the opening brief, the Department is currently engaged in a negotiated rulemaking process to develop new regulations for borrower defense discharges.  Despite Plaintiffs' assertions to the contrary, there is nothing inappropriate about the Department taking

this step or reevaluating its priorities in light of a change in administration, so long as it follows the procedures set forth by Congress to govern agency action. *See Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part and dissenting in part) (noting that a change in administration is a "perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations," and finding that an agency is entitled to "evaluate priorities in light of the philosophy of the administration" so long as it "remains within the bounds established by Congress"); *Nat'l Venture Capital Ass'n v. Duke*, No. 17-cv-1912 (JEB), 2017 WL 5990122, at *1 (D.D.C. Dec. 1, 2017) (noting that "[e]lections have consequences" and that the APA "shapes the contours of those consequences").

Similarly, there is nothing inappropriate about the Department taking into account its reconsideration of the regulations encompassed in the Final Rule in determining that justice requires postponing the effective date pending judicial review. Plaintiffs claim, in conclusory fashion, that "the agency cannot justify its invocation of section 705 on a desire to revisit rules, as it did here." Pls.' Opp. at 13 n.6. But they do not explain why an agency cannot consider, as part of its overall assessment of whether justice requires postponing an effective date pending judicial review, the fact that the agency action under review may be substantively revised and that, given the prospect of such revision, it might make more sense to adhere to the regulatory status quo during the pendency of judicial review.[6]

Section 705 is a lawful source of authority that allows an agency to effect the temporary postponement at issue here. The Department is also separately following APA procedures in

---

[6] Furthermore, even if Section 705 provided that only litigation-related reasons are appropriate justifications for staying agency action pending judicial review, Defendants are entitled to summary judgment. Even standing alone, the litigation-related reasons set forth in the 705 Notice sufficiently justify the Department's finding that justice requires staying implementation.

reconsidering the Final Rule, but unless and until those procedures result in a new agency policy, the Department is under no obligation to recognize a change in position and revisit its findings regarding the costs and benefits of the regulations encompassed within the Final Rule.

Plaintiffs' proffered application of the APA's arbitrary and capricious standard would essentially render Section 705 a nullity.  As Plaintiffs recognize, the Department has the authority to either amend or fully repeal the Final Rule through the rulemaking provisions of the APA.  Were it to eventually proceed in that manner, it would be required to provide a fulsome explanation of its reasons for changing policy, including a discussion of why it is currently weighing the costs and benefits associated with the regulations encompassed in the Final Rule differently than it did when it first published those regulations.  Section 705, on the other hand, allows an agency to take the limited step of delaying the effective date of an action pending judicial review, and allows an agency to do so upon making the simple finding that "justice so requires."  Were an agency, every time it invoked its authority under Section 705, required to justify its action in the same manner it must justify substantive repeal of the delayed action, Section 705 would serve no independent purpose and be rendered superfluous.  *See Mail Order Ass'n of Am. v. U.S. Postal Serv.*, 986 F.2d 509, 515 (D.C. Cir. 1993) ("[W]e are to construe statutes, where possible, so that no provision is rendered 'inoperative or superfluous, void or insignificant.'" (citation omitted)).

Plaintiffs' argument that the Department's 705 Notice is invalid because it is actually an improperly justified substantive rescission of the Final Rule merely assumes its own conclusion and fails to grapple with whether the Notice complied with Section 705 (as opposed to Plaintiff's conception of "the overarching purposes of the APA," Pls.' Opp. at 19).  As described above and in the opening brief, the Department did all that was required under Section 705, and Plaintiff has provided no basis for imposing additional requirements on an agency's Section 705 discretion that

do not appear in the text.  *See Wheelabrator Corp. v. Chafee*, 455 F.2d 1306, 1309 (D.C. Cir. 1971) ("Where government officials act within the limits of the discretion conferred upon them by Congress, there is no arbitrary and capricious action which the courts have the power to enjoin.").[7]

## III.   PLAINTIFFS DO NOT DEMONSTRATE THE IFR IS INVALID

### A.   The Department's Interpretation Is Entitled To *Chevron* Deference

The IFR providing notice of the new effective date of the Final Rule is based on the Department's long-standing interpretation of the master calendar provision of the HEA, which is entitled to *Chevron* deference.  Plaintiffs' arguments against *Chevron* deference mischaracterize the facts and rely on erroneous statements of law, and therefore should be rejected.

First, the Court should reject Plaintiffs' claim that deference is inappropriate because "ED [allegedly] fails to point to any ambiguity in the statute."  Pls.' Opp. at 28.  The Department explicitly identified in its opening brief the statutory silence that its interpretation fills.  Defs.' MSJ at 38 ("The master calendar provision does not speak to the precise question at issue here – whether a regulation that was scheduled to become effective on July 1, but that does not take effect on that date, may go into effect sometime during the award year, or must wait for the next July 1 to go into effect").  Plaintiffs' choice to ignore this statement of the statutory gap does not warrant eschewing *Chevron* deference.[8]  Plaintiffs' further argument that "[n]owhere in the IFR did ED

---

[7] Plaintiffs also take issue with the 705 Notice because it did not explicitly reference the Department's interpretation of the HEA's master calendar requirement.  Pls.' Opp. at 25.  This argument is unfounded because Section 705 does not require an agency to make any specific findings and the rationale given in the 705 Notice was sufficient to satisfy that statutory standard. In any case, as explained in the IFR, the delay required by the master calendar provision is only until July 1, 2018.  Given the generally long duration of a complex civil litigation and how unlikely it is that the CAPPS litigation would conclude significantly in advance of July 1, 2018, the fact that the Department did not include in the 705 Notice a discussion of the implementation date required by the master calendar is insufficient to render its action arbitrary or capricious.

[8] To the extent Plaintiffs' argument is that the Department was required to, but did not, state in the IFR what was ambiguous about the statute, the D.C. Circuit has made clear that it "does not require

claim to be *interpreting* an ambiguous statute," Pls.' Opp. at 28 (emphasis added), is similarly unavailing.  In the IFR itself, the Department made clear that it has "consistently *interpreted*" the master calendar requirement to provide that any regulatory change relating to student financial aid programs may take effect only at the beginning of an award year.  AR-B at 3 (emphasis added).[9]

Plaintiffs' next convoluted argument for *de novo* review – that the Department's reference in the IFR to its lack of "discretion to set an effective date earlier than July 1, 2018" precludes *Chevron* deference – should similarly be rejected.   Plaintiffs' argument conveniently confuses discretion in interpreting a statute with discretion to act in light of the agency's interpretation. Only lack of the former precludes *Chevron* deference, but the Department only lacks the latter here.  The Department does not contend that it did not have discretion in interpreting the HEA; it merely states that *once* it interpreted the statute as providing that regulations should become effective only on July 1, it did not, going forward, have discretion to implement the final regulations on a date other than July 1.  AR-B at 3-4 (stating that "the Department has consistently interpreted and applied the master calendar requirement to provide that any regulatory change relating to student financial aid programs may take effect only at the beginning of an award year," and noting the Department's "limited discretion to set an effective date under [this interpretation of] the master calendar requirement").

Plaintiffs' citation to *Arizona v. Thompson*, 281 F.3d 248, 254 (D.C. Cir. 2002) ("[d]eference …is only appropriate when the agency has exercised its own judgment, not when it

---

such statements."  *UC Health v. NLRB*, 803 F.3d 669, 673 n.1 (D.C. Cir. 2015) (rejecting contention that an agency interpretation was not entitled to *Chevron* deference because the agency "never relied on *Chevron* nor stated explicitly that the statute is ambiguous").

[9] Because the IFR is clear on its face that it was based on this longstanding interpretation, Defendants' argument that the interpretation is entitled to *Chevron* deference is not an impermissible "post hoc rationalization," as Plaintiffs assert.  *See* Pls.' Opp. at 29-30.

believes that interpretation is compelled by Congress" (citation omitted)), does not save their argument. As the Department' opening brief explained, unlike in *Arizona*, "the Department does not contend that there is only one *possible* interpretation of the HEA [that is compelled by the statute]; rather, the Department's position is that its interpretation is the most reasonable . . .[t]his does not preclude the Court from deferring to the Department's interpretation."  Defs.' MSJ at 39.

Finally, Plaintiffs' halfhearted challenge to Congress' delegation to the Department does not defeat *Chevron* deference.  Without citing any supporting authority, Plaintiffs claim that the HEA's clear delegation to the Department to implement Department programs does not encompass delegation of authority to determine the meaning of a statutory provision related to those programs.  This nonsensical proposition – that an explicit congressional delegation is required for each individual interpretation an agency might offer - is belied by the language of *Chevron* itself and its progeny.  *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984) ("[s]ometimes the legislative delegation to an agency on a particular question is implicit rather than explicit.  In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency"); *see also Texas Rural Legal Aid v. Legal Servs. Corp.*, 940 F.2d 685, 691 (D.C. Cir. 1991) ("under *Chevron*, statutory silence or ambiguity on a particular question means that 'a court may assume that Congress implicitly delegated the interpretive function to the agency'" (citation omitted)); *Ass'n of Private Colls. & Univs. v. Duncan*, 870 F. Supp. 2d 133, 145 (D.D.C. 2012) (analyzing a Department of Education regulation promulgated pursuant to the HEA under the *Chevron* framework, and noting that "if the statute is silent or ambiguous with respect to the specific issue, the court must uphold the agency's interpretation as long as it is reasonable" (citations omitted)).

**B.      The Department's Interpretation Is Reasonable**

Having failed to establish that *Chevron* deference is inappropriate, Plaintiffs' remaining arguments about the IFR are irrelevant because they ignore the appropriate deference due to the agency's interpretation, and that the only proper inquiry is whether the agency's interpretation was permissible.  Plaintiffs instead argue that the Court should reject the IFR because it is not "actually compelled by statute."  Pls.' Opp. at 30 (citation omitted).  But this argument that the Department's interpretation is not *the best possible* interpretation of the master calendar provision misstates the law.  The Department is only required to offer a *permissible* or *reasonable* interpretation of the provision.  *See Chevron*, 467 U.S. at 845.  Because Plaintiffs do not seriously argue that the Department's interpretation is impermissible, Plaintiffs' arguments are unavailing.

Even if *Chevron* deference did not apply, Plaintiffs' arguments would be unsuccessful because they are based on erroneous statements of law and fact.  For example, Plaintiffs claim that Defendants' interpretation of the master calendar requirement is precluded because it adds "a rules can only be effective on July 1" requirement to the master calendar requirement and, Plaintiffs contend, if a statute explicitly imposes one limit on agency action, it cannot be interpreted to also, implicitly, impose another limit. Pls.' Opp. at 31.  Plaintiffs cite no supporting authority for this novel, and illogical, canon of construction and the Department is unable to identify any case in which a court has relied on such logic.

Plaintiffs' specific challenges to the Department's interpretation, based on the statute's text and objectives, and the Department's historical practices, are no more successful.

*1.      The master calendar provision's text supports the Department's interpretation*

Plaintiffs' textual argument focuses on the word "until."  Their argument is, at most, that the inclusion of this word shows the statute does not *explicitly* provide that regulations can only

be implemented at the beginning of an award year (i.e. on July 1), but just means that regulations cannot be implemented before then. Pls.' Opp. at 31-32. But the Department's position is not that the statute explicitly provides such a rule; rather, it is that the statute is ambiguous as to this point, and that, based on other statutory language and objectives, the master calendar provision should be read to incorporate such a rule. The statutory ambiguity is evident in the statute's inclusion of both the word "until," on which Plaintiffs focus, and the phrase "beginning of the [award year]," which complicates Plaintiffs' interpretation. *Id.* at 30. Plaintiffs try hard to argue that the master calendar requirement means that regulations not finalized by November 1 can be implemented *at any time* during the second award year following the relevant November 1. Plaintiffs' interpretation may have been reflected in the statutory language if Congress omitted the words "beginning of the," so that the statute stated instead that regulations not published in final form before November 1 "shall not become effective until the second award year after such November 1 date." But Congress *did* include these words. Because Plaintiffs' interpretation renders the words "beginning of the" superfluous, the Court should reject that interpretation. *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant").[10]

> 2.   *Plaintiffs do not show that the statute's objectives do not support the Department's interpretation*

---

[10] This reading is supported by the legislative heading, titling § 1089(c) "[d]elay of effective date of late publications." By using the singular "date", this heading reflects the notion that there is only one effective date during the year. Plaintiffs' claim that the plural might only reflect that every rule has an effective date should be rejected because they cite no support for this claim and, in fact, the plural form is more appropriately used when referring to multiple effective dates, related to different rules. *See, e.g.*, *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225, 229-30 (7th Cir. 1992) ("… effective dates (plural because several sections carry different effective dates)…").

Plaintiffs continue to argue that, to the extent the purpose of the master calendar requirement is to provide notice, the regulated community has already been afforded the requisite level of notice and predictability because the Final Rule was published in final form by November 1, 2016.  Pls.' Renewed Mot. for Summ. J., at 52-53, ECF No. 29; Pls.' Opp. at 33.  But, as the Department noted in its opening brief, this argument ignores the effect of the CAPPS litigation and the 705 Notice, which identified significant legal concerns regarding the Borrower Defense regulations and created significant uncertainty about their future implementation.  In light of this active legal challenge, there is no basis to conclude that publication of the current version of the Rule in November 2016 provided the regulated industry the kind of advance notice the master calendar requirement deems necessary.  Without the added certainty of clarifying *when* a given regulation will become effective and in what form, mere notice of the existence of a substantive regulatory change does not allow the regulated industry to adjust in advance its behavior to comply with the regulatory requirements and prepare for the timely delivery of student aid funds.  Plaintiffs do not address these points, which the Department raised in its opening brief, other than to summarily claim that the Court's upholding the IFR would not be consistent with the "'notice-giving and certainty-promoting objectives' [the Department] touts," and to offer the unsubstantiated conclusion that the 705 Notice's promulgation did not negate the already-provided notice, and so the notice provided is more than the statute required.  Pls.' Opp. at 33.

Plaintiffs' continued insistence that if the Court invalidated the 705 Notice, the Final Rule could go into effect immediately because adequate notice has already been provided, should be rejected as it actually supports the Department's rationale for the IFR.  If Plaintiffs were correct that the Final Rule could be implemented as soon as the Court ruled on the 705 issue, the regulated entities and the public would have no advance notice about *when* the rule was to go into effect,

21

and would have no preparation time to implement the Final Rule in advance of the Court's ruling, the timing of which neither regulated parties nor even the parties to the litigation can know in advance. An interpretation yielding such indeterminacy is inconsistent with the HEA's objectives of providing notice and a simplified process for applying for Federal aid.

3.      *The Department's long-standing practice supports its interpretation*

The Department's long-standing policy and practice of implementing financial aid regulations only at the start of an award year (i.e. only on July 1), demonstrates that the Department's interpretation of the master calendar requirement is reasonable. Plaintiffs claim that the Department's practice should not be given much weight because the existence of the practice "does not demonstrate that the *statute* requires that practice." Pls.' Opp. at 34. But Plaintiffs offer no support for this purported requirement.

Plaintiffs also insufficiently support their challenge to the Department's reliance on an October 2015 regulation as evidence of the Department's practice. Plaintiffs argue that "a single reference in responding to a comment two years ago would not evidence a long-standing agency interpretation." *Id.* But the Department does not claim that this reference constitutes the entirety of the long-standing interpretation. Rather, in the paragraph preceding the reference, the Department demonstrates the longstanding nature of the interpretation[11] by citing more than a dozen agency actions over twenty years that reflect this interpretation.[12]

---

[11] Plaintiffs claim that none of these rules includes a statement that ED interprets the master calendar provision to prohibit an effective date other than the day an award year starts. This is irrelevant. That the Department has a long-standing interpretation that is consistent with the interpretation it is now offering is what matters.

[12] In a footnote, Plaintiffs claim that one of the cases cited by the Department "does not reflect current law regarding judicial deference to agency practices." Pls.' Opp. at 34 n.14. But Plaintiffs fail entirely to explain how or why the cited case diverges from "current law regarding judicial deference to agency practices," nor do they cite any authorities in support of this contention.

## C.     The IFR Was Adequately Justified

As The Department's opening brief demonstrates, Plaintiffs' arguments that the IFR is arbitrary and capricious are unavailing because where, as here, an agency action merely sets forth the agency's interpretation of its governing statute to provide notice to the regulated industry, the Court's inquiry is less demanding than if it were reviewing an agency's substantive policy decision within a complex regulatory scheme.  Plaintiffs seek to construe this argument as the Department claiming its "lack of discretion" means it need not consider the impact of the IFR's delaying the effective date of the Final Rule.  Pls.' Opp. at 35.  Plaintiffs make this unsupported leap so they can argue that "ED cannot have it both ways" (presumably meaning that the Department cannot claim both that its interpretation is entitled to deference as an exercise of agency *discretion*, and that its *lack of discretion* means it does not have to consider the effects of the IFR).  *Id*.

But, as described *supra*, Plaintiffs again confuse exercising discretion in interpreting a statute with discretion to act in light of the agency's interpretation.  The Department has consistently claimed it exercised the former, and lacked the latter.  This distinction undermines Plaintiffs' play on the word "discretion" and their argument that the Department is trying "to have it both ways."  *Id*.  In any event, Plaintiffs offer no other challenge to the Department's conclusion that the Court's inquiry here should be less demanding than if the Court were reviewing a substantive policy determination, Defs.' MSJ at 47, thus conceding the point.  And, as explained in the Department's opening brief, under that standard, any discussion of costs and benefits related to delayed implementation as well as any consideration of the impact of the "delay" on student borrowers is irrelevant to the Department's implementation of the master calendar requirement and unnecessary to justify the delay reflected in the IFR.[13]

---

[13] As argued in Defendants' opening brief, Plaintiffs lack standing because their claimed injuries stem from delayed implementation of the Final Rule, but the HEA's master calendar requirement,

## IV.    PLAINTIFFS DO NOT DEMONSTRATE ADDITIONAL PROCEDURES WERE REQUIRED

With respect to the 705 Notice, Plaintiffs only claim that additional procedures were required because the 705 Notice was "not authorized by section 705." *See* Pls.' Opp. at 26. Because, as described above, the 705 Notice *was* valid, no additional procedures were required. *See id.* (conditioning argument that additional procedures were required on conclusion that the Department's postponement of the effective date of the relevant provisions of the Final Rule "was not authorized by Section 705"). As for the IFR, Defendants have explained that "good cause" excused the applicability of notice and comment and negotiated rulemaking procedures here because the Department's lack of discretion to pick a different implementation date rendered the procedures "unnecessary." Defs.' MSJ at 49-50. Plaintiffs again argue that "ED cannot simultaneously argue that it 'lacked discretion' to reach a different conclusion" and that it was exercising discretion in interpreting the master calendar provision. Pls.' Opp. at 35. As explained above, Plaintiffs' strategic confusion of discretion in interpreting a statute with discretion to act in light of the agency's interpretation is unavailing. In any event, any harm from the lack of notice and comment on the IFR was mitigated by the Department's post-promulgation comment period.

## V.    ANY RELEVANT REMEDY ISSUES SHOULD BE ADDRESSED IN SUPPLEMENTAL BRIEFING

Plaintiffs' opening brief argued that both the 705 Notice and the IFR should be "set aside" for various reasons. Pls. Opp. at 37. But those arguments focused on alleged deficiencies in the

---

in any event, prevents the Rule from becoming effective before July 1, 2018. Although Plaintiffs' now claim that a favorable ruling on their 705 claim would provide them with "a significant measure of relief" even if the Final Rule could not go into effect before July 1, 2018, Pls.' Opp. at 40, that claim is undercut by their assertion that "every day of delay causes continued harm to student borrowers." *Id.* at 38. Ultimately, Plaintiffs have failed to demonstrate that they are entitled to any relief requiring that the Final Rule become effective before July 1, 2018. Defendants are thus entitled to summary judgment regardless of whether the Court considers the Department's interpretation of the HEA on the merits or in the context of standing.

705 Notice and the IFR and provided no explanation as to why vacatur would be the appropriate remedy for such alleged legal deficiencies.  Plaintiffs did not even cite the relevant standard for evaluating the appropriateness of vacatur until their reply brief.  The Court should therefore, if necessary after ruling on the legality of the Section 705 Notice and the IFR, order separate briefing[14] on any appropriate remedy.  Such bifurcated briefing is not extraordinary, as Plaintiffs purport.  Rather, courts have repeatedly ordered such bifurcated briefing.  *See, e.g.*, *Am. Great Lakes Ports Ass'n v. Zukunft*, 2017 WL 5128999, at *18 (D.D.C. Nov. 3, 2017) (court "not inclined to decide the issue of remedy without additional briefing from the parties now that the issues in the cross-motions have been resolved"); *Sierra Club v. U.S. Dep't of Agric., Rural Util. Serv.* 841 F. Supp. 2d 349, 362 (D.D.C. 2012) (determining remand, not vacatur, was the appropriate remedy after court-ordered supplemental briefing about this issue).

Dated:  January 19, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*

---

[14] Defendants have certainly not waived their objections to vacatur.  Their opening brief specifically stated that they disagree with Plaintiffs that the extreme remedy of vacatur is appropriate.  Defs.' MSJ at 52 n.23.  But even if they hadn't, the Court should still grant the Department's request for supplemental briefing.  *See St. Lawrence Seaway Pilots Ass'n v. U.S. Coast Guard*, 85 F. Supp.3d 197, 208 (D.D.C. 2015) (ordering, despite Defendant's silence as to remedy, supplemental briefing on remedy because court found it appropriate to have "benefit of argument from all parties").  Briefing the issue of remedy *after* the Court decides the merits is more efficient because it streamlines the issues to be addressed.  To brief these issues now, the parties would have to describe the appropriate remedy under multiple potential outcomes and different theories of liability.  *See, e.g.*, *Am. Lung Ass'n v. EPA*, 134 F.3d 388, 392 (D.C. Cir. 1998) (finding remand to agency was appropriate remedy where agency needed to explain its conclusions more fully).  If the Court instead solicits supplemental briefs about remedy *after* it has ruled on the merits, the parties can tailor their arguments to the Court's specific ruling.

R. CHARLIE MERRITT
Trial Attorney
KAREN S. BLOOM
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
(202) 616-8098
robert.c.merritt@usdoj.gov

*Counsel for Defendants*