# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEAGHAN BAUER, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ELISABETH DeVOS, Secretary, U.S. Department of Education, *et al.*,<br><br>*Defendants.* | Civil Action No. 17-1330 (RDM) |

## MEMORANDUM OPINION AND ORDER

Having concluded that the Department of Education's various actions delaying the Borrower Defense Regulations violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Court turns to the issue of the appropriate remedy. The Court concludes that, as with most unlawful agency actions, the proper remedy here is vacatur. The Court will, accordingly, vacate the "Final Delay Rule," William D. Ford Federal Direct Loan Program, 83 Fed. Reg. 6,458 (Feb. 14, 2018). The Court will also vacate the "Section 705 Stay," William D. Ford Federal Direct Loan Program, 82 Fed. Reg. 27,621 (June 16, 2017), but will stay that vacatur for 30 days from the date of issuance of the Court's original opinion, *Bauer v. DeVos*, No. 17-1330, 2018 WL 4353656 (D.D.C. Sept. 12, 2018)—that is, until October 12, 2018 at 5:00 p.m., to allow the Department to attempt to remedy the deficiencies identified in the Court's original opinion.

## I. BACKGROUND

On November 1, 2016, the Department of Education promulgated the Borrower Defense Regulations, a package of regulatory changes to federal student loan programs that was to

become effective on July 1, 2017. William D. Ford Federal Direct Loan Program ("Borrower Defense Regulations"), 81 Fed. Reg. 75,926 (Nov. 1, 2016). Shortly before the effective date, the California Association of Private Postsecondary Schools ("CAPPS") brought suit challenging the regulations, and, on June 2, 2017, CAPPS sought a preliminary injunction blocking the implementation of two aspects of the new rules. Dkt. 1, Dkt. 6, *CAPPS v. DeVos*, Civ. No. 17-999 (D.D.C.). But that motion was never fully briefed or decided because the Department, on its own accord, issued a stay under § 705 of the APA, postponing not only the effective date of the two changes that CAPPS had asked the Court preliminarily to enjoin, but most of the other portions of the new regulations as well. Section 705 Stay, 82 Fed. Reg. at 27,621. Separately, the Department issued an interim final rule on October 24, 2017, that delayed the effective date of the Borrower Defense Regulations to July 1, 2018. William D. Ford Federal Direct Loan Program ("Interim Final Rule"), 82 Fed. Reg. 49,114 (Oct. 24, 2017). That same day, the Department also issued a notice of proposed rulemaking ("NPRM") to further delay the effective date to July 1, 2019. William D. Ford Federal Direct Loan Program ("October 24, 2017 NPRM"), 82 Fed. Reg. 49,155 (Oct. 24, 2017). Then, on February 14, 2018, the Department issued a final rule delaying the effective date of the Borrower Defense Regulations until July 1, 2019. Final Delay Rule, 83 Fed. Reg. at 6,458.

In its earlier opinion, the Court held that the Final Delay Rule and Section 705 Stay were both unlawful. *See Bauer*, 2018 WL 4353656, at *1. With respect to the Final Delay Rule, the Court held that the Department failed to comply with the procedures prescribed by the Higher Education Act ("HEA"), 20 U.S.C. § 1070 *et seq.* In particular, the Court held that the Department's decision to dispense with the negotiated rulemaking procedures that generally apply in Title IV rulemakings, *see* 20 U.S.C. § 1098a(a), was not supported by a reasoned

invocation of the "good cause" exception, *see Bauer*, 2018 WL 4353656, at *14–18. With respect to the Section 705 Stay, the Court held that the stay was arbitrary and capricious. *See id.* at *25. As the Court explained, the Department had stayed the Borrower Defense Regulations pending the resolution of the *CAPPS* litigation on three grounds: the *CAPPS* litigation raised "serious questions" about the validity of the Borrower Defense Regulations; the delay would not cause the government any significant harm; and the Department was, in any event, reconsidering the regulations, and the delay would minimize confusion while that process proceeded. *Id.* at *22 (citing Section 705 Stay, 82 Fed. Reg. at 27,621). The Court concluded that none of the reasons withstood APA scrutiny. *Id*. The first rationale was "unsupported by any analysis" and "was at odds with the Department's prior [and unacknowledged] conclusion to the contrary." *Id.* The second and third rationales also lacked "any meaningful analysis" and were "beyond the scope of the § 705 considerations" because they were "unrelated to the pending *CAPPS* case." *Id.*

## II.  LEGAL STANDARD

"[W]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated . . . ." *NAACP v. Trump*, 298 F. Supp. 3d 209, 243 (D.D.C. 2018) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)). That rule, however, is not absolute, and a remand without vacatur may be "appropriate [if] 'there is at least a serious possibility that the [agency] will be able to substantiate its decision' given an opportunity to do so, and when vacating would be 'disruptive.'" *Radio-Television News Director Ass'n v. FCC*, 184 F.3d 872, 888 (D.C. Cir. 1999) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993)). In some circumstances, moreover, a combined approach is warranted; the Court may vacate the invalid rule but stay "its

order of vacatur for a limited time to allow the agency to attempt to cure defects that the court has identified." *NAACP v. Trump*, 298 F. Supp. 3d at 244 (staying vacatur for 90 days so agency could provide more fulsome explanation for rescission of DACA); *see also, e.g.*, *Nat. Res. Def. Council, Inc. v. EPA*, 301 F. Supp. 3d 133, 145 (D.D.C. 2018) (staying vacatur of rule governing pollution level in Anacostia River until agency promulgated replacement rule). Such a combined approach falls within the Court's remedial discretion. *See Friends of the Earth, Inc. v. EPA*, 446 F.3d 140, 142, 148 (remanding to district court to vacate agency rule, but noting that the district court had "remedial discretion . . . to stay [its] order on remand"); Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 Duke L.J. 291, 324–25 (2003) ("[T]he criteria that judges use to determine whether to order a stay have evolved, and variations on those criteria have emerged in specific contexts, but the APA drafters' core premise that they were conferring an equitable power has not been controversial." (footnotes omitted)); Patricia M. Wald, *Judicial Review in Midpassage: The Uneasy Partnership Between Courts and Agencies Plays On*, 32 Tulsa L.J. 221, 236 (1996) ("[T]here are inherent powers in a reviewing court to postpone vacation until the agency has a chance to make things right."); *cf. Buckley v. Valeo*, 424 U.S. 1, 143 (1976) (staying judgment for 30 days to "afford Congress an opportunity to reconstitute the [FEC] by law or to adopt other valid enforcement mechanisms . . . ."). Vacatur with a brief stay may be warranted, for example, where the *Allied-Signal* factors are satisfied, but where a prolonged agency remand threatens to deprive one or more parties of significant rights. *See NAACP v. Trump*, 298 F. Supp. 3d at 245.

### III.  ANALYSIS

**A.      February 14, 2018 Final Delay Rule**

All parties are in accord—or at least do not contest—that vacatur is the appropriate remedy with respect to the Final Delay Rule, which was promogulated without observance of the proper procedures under the HEA.  At the September 14, 2018 hearing, the Department stated that, "to the extent [the Court] feels that vacatur is appropriate . . . [the Department] is not prepared . . . to oppose that."  Dkt. 90 at 55.  Moreover, as the Court has previously noted, the Department declined to address this issue in opposing Plaintiffs' motion for summary judgment.  *See* Dkt. 58-1 at 79–80 n.28.  Accordingly, the Court will vacate the Final Delay Rule.

**B.      Section 705 Stay**

Plaintiffs and the Department disagree, however, as to the appropriate remedy with respect to the Section 705 Stay.  Plaintiffs ask the Court to vacate the stay and to allow the Borrower Defense Regulations to take effect immediately.  Dkt. 55-1 at 79; Dkt. 56 at 72.  In the alternative, they ask the Court to allow the Borrower Defense Regulations to take immediate effect, but, if necessary, to issue a temporary restraining order ("TRO") in *CAPPS*, Civ. No. 17-999, staying the provision prohibiting predispute arbitration agreements and class action waivers—the only provision that CAPPS had previously sought to enjoin.  Dkt. 90 at 48.  The Department counters that the appropriate remedy is remand without vacatur, or, in the alternative, to "stay any implementation pending the [preliminary injunction] briefing" in *CAPPS*, Civ. No. 17-999.  *Id.* at 41.  The Department also represented that, in the event the Court orders the Borrower Defense Regulations to take immediate effect, the Department requires at least 60 days to implement the regulations.  *Id.* at 56.

As an initial matter, the Court declines to adopt Plaintiffs' second suggestion. The Court cannot sua sponte issue a TRO in *CAPPS*, Civ. No. 17-999, when CAPPS itself has not requested one. The Court, accordingly, turns to the *Allied-Signal* factors to analyze whether remand without vacatur is appropriate.

The first consideration—whether the Department could substantiate the Section 705 Stay on remand—presents a close call. The Department could, "in theory," cure the deficiencies identified in the Court's earlier opinion, but it "may face practical obstacles when attempting to remedy them." *NAACP v. Trump*, 298 F. Supp. 3d at 244. To begin, given the incongruency between the scope of the Section 705 Stay (which covers 22 provisions) and the scope of relief sought in the motion for a preliminary injunction that CAPPS filed and then withdrew, *see Bauer*, 2018 WL 4353656, at *23, the Department may not be able to justify the full breadth of the Section 705 Stay. The Department would also need to explain why it believes CAPPS has raised serious questions about the lawfulness of the Borrower Defense Regulations; why it no longer ascribes to the view that the prohibition of predistpute arbitration agreements and class action waivers is lawful, as it had previously stated, *see* Borrower Defense Regulations, 81 Fed. Reg. at 76,021–24; and how that conclusion relates to other provisions of the Borrower Defense Regulations. Nevertheless, because there is a "nontrivial likelihood" that the Department could justify the Section 705 Stay on remand, *NAACP v. Trump*, 298 F. Supp. 3d at 244 (quoting *WorldCom, Inc. v. FCC*, 288 F.3d 429, 434 (D.C. Cir. 2002)), the first *Allied-Signal* factor weighs (slightly) in favor of remand without vacatur.

The second *Allied-Signal* factor—the risk of disruption—also tips in favor of remand without vacatur. In light of the *CAPPS* litigation, which is now unstayed, and the *CAPPS* plaintiff's entitlement to be heard on the merits of its preliminary injunction, the Court concludes

that vacating the Section 705 Stay, and allowing the Borrower Defense Regulations to take immediate effect, could result in an "interim change" that "may itself be changed." *Id.* at 245 (quoting *Allied-Signal*, 988 F.2d at 150–51).  If the Court were to, for example, vacate the Section 705 Stay, and then conclude that CAPPS is entitled to preliminary relief, the Borrower Defense Regulations might take effect this week, only to be enjoined, at least in part, two or three weeks later.  Without any advance notice and opportunity to prepare, such an abrupt change would cause regulatory vertigo.  As such, the threat of disruption also weighs in favor of remand without immediate vacatur, at least for a few weeks.

Because this case is about the consequences of delay, however, the Court is mindful that, in crafting the appropriate remedy, time is of the essence.  The further delay that would result from remanding the Section 705 Stay to the Department for further explanation without vacatur risks depriving Plaintiffs of meaningful relief.  Accordingly, the Court will chart an intermediate course: the Court will vacate the Section 705 Stay, but stay the vacatur for 30 days from the date of its opinion declaring the Section 705 Stay unlawful.  This will allow the Department to attempt to remedy the deficiencies in the Section 705 Stay while the *CAPPS* litigation proceeds in an expeditious manner; it will also curtail the harm to student borrowers that a remand without vacatur would otherwise engender.

## CONCLUSION

It is hereby **ORDERED** that the Final Delay Rule, 83 Fed. Reg. 6,458, shall be immediately **VACATED**. It is further **ORDERED** that the Section 705 Stay, 82 Fed. Reg. 27,621, shall be **VACATED**, but the vacatur shall be **STAYED** until October 12, 2018 at 5:00 p.m.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 17, 2017